UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

HENRY HAINING ZHANG,

        Plaintiff,

    -against-                           14 Civ. 6945 (CM)

KON KI LO, et al,

        Defendants.

_____x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/5/20

## ORDER DENYING MOTION FOR DEFAULT JUDGMENT AND DISMISSING CASE FOR FAILURE TO SERVE IN ACCORDANCE WITH HAGUE CONVENTION, AS PROVIDED IN THE COURT'S ORDER DATED APRIL 18, 2018

McMahon, C.J.:

This *pro se* action was brought by a resident of East Stroudsburg, Pennsylvania, against a number of individuals and entities resident in either the People's Republic of China or Hong Kong, a quasi-autonomous administrative department of the PRC. Plaintiff brings a number of state law causes of action against the defendants; he also alleges that the defendants violated the Racketeer and Corrupt Influence Act, (RICO) – a common *in terrorem* litigation tactic, especially when (as is alleged here) the claims arise out of a business arrangement among plaintiff and the defendants that did not end well for plaintiff. The actions about which plaintiff complains- breaches of an exclusive contract, breaches of fiduciary duty, interference with contract, and intentional infliction of emotional distress – appear to have taken place between 2006-2009.

A review of the docket indicates that the summonses issued when this lawsuit was filed 2014 were returned "executed" as to all defendants back in 2014. Unfortunately, it turned out that all the defendants were "served," either in Hong Kong or in the PRC, by mail or by personal

1

delivery effected by some unknown individual. There was no indication on the docket that any defendant was served in accordance with the Hague Convention on Service of Process, to which China and Hong Kong are both signatories.

When nothing happened in this case for several years, the court dismissed it for failure to prosecute in 2017. (Dkt. No. 19.) Plaintiff appealed the dismissal. He then filed a motion for vacatur of the court's order dismissing the case for failure to prosecute. Because of plaintiff's pro se status, as well as the fact that his effort to file a default judgment motion was ineffectual due to a lack of familiarity with the rules, I agreed to resume jurisdiction over the action so that I could grant the motion to vacate if plaintiff withdrew his appeal. (Dkt. No. 26.) Plaintiff did withdraw his appeal and the court vacated the dismissal. (Dkt. No. 27.)

Plaintiff then sought to file a proper motion for default judgment. However, the Clerk of Court declined to issue certificates of default, again because there was no evidence in the record that the defendants had been served pursuant to the Hague Convention. (Dkt. No. 28 and subsequent Clerk's Action note). The court denied plaintiff's motion for default judgment, albeit without prejudice. (Dkt. No. 31.)

In the alternative, plaintiff moved for an order directing a method of substituted service on defendants (Id.) That motion, too was denied. The court advised that the plaintiff had to make an effort to serve pursuant to the Hague Convention before alternative methods of service could even be considered.  (Id.)

The Clerk issued new summonses, but another year passed with no activity shown on the docket. That was not entirely surprising, as Hague Convention service is a cumbersome process. Moreover, the PRC and Hong Kong have different perspectives on what constitutes adequate Hague Convention service. (See How to Serve Process in Hong Kong

2

<https://www.haguelawblog.com/2017/01/serve-process-hong-kong/>). The PRC refuses to waive compliance with any of the formal protocols (which is to say, China quite intentionally makes it as difficult as possible to service a Chinese resident in accordance with the Hague Convention). Hong Kong is not as strict. Nonetheless, both jurisdictions require compliance with certain formalities.

So the court was prepared to give plaintiff time to effect service. However, the court was not prepared to wait forever. In January 2019 -- nine months from the issuance of the April 2018 order -- the court gave plaintiff until April 29, 2019 to file proof of service in accordance with the Hague Service Convention. Plaintiff was advised that the case would be dismissed for failure to prosecute if he failed to comply. (Dkt. No. 34.)

In April 2019, there began to appear on the docket indications that service had been attempted on at least some of the defendants. Dockets entries 35, 36, 37 and 38 indicate "summons returned executed" as to defendants Jonathon So (at an address in Hong Kong), Kong Ki Lo (at an address in Hong Kong), HKCMCPA Company Limited (at an address in Hong Kong), and Eatware Inc. (at an address in the PRC). As was the case five years earlier, service was allegedly made by someone named Xin Shi, who, according to the affidavits of service that were filed with the plaintiff's motion for default judgment, now lives in Albrightsville, Pennsylvania. The affidavits of service indicate that this individual effected service either by "delivering" the summons and complaint to the indicated addressee (which would mean that he went to Hong Kong) or by mailing them (which was indicated by crossing out the word "delivered" on the return of service and inserting the word "mailed"). There was no indication that any particular form of mailing was used, or from where the mail was sent. There was no indication, for the PRC defendants, that the plaintiff had delivered papers to relevant authorities in Beijing, as required by the Hague

3

Convention, or that the papers had been translated into Chinese. There was no indication, for individuals to whom service was allegedly made by personal delivery in Hong Kong defendants, that Mr. Shi, who swore out the affidavits of service, qualified as someone who could effectuate service personally in Hong Kong, as prescribed by treaty – in fact, there was no indication that he went to Hong Kong, since no expenses were claimed that would cover the cost of such a journey.

Nonetheless, plaintiff filed a second motion for default judgment. This time, he did not bother to seek certificates of default from the Clerk of Court (Dkt. No. 41)– no doubt figuring that he would not get them.

The court now denies the motion for default judgment as against all defendant and dismisses the case with prejudice, because after almost six years, defendants still have not been served with process as required by law.

## STANDARD FOR DEFAULT JUDGMENT

This case comes before the court on a motion for a default judgment.

The mere fact that no answer has been filed is insufficient to allow the court to enter a default judgment. "Rule 55 sets forth a two-step process for an entry of default judgment." GuideOne Specialty Mutual Ins. Co. v. Rock Community Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993)). A plaintiff seeking default must clear both hurdles: he must prove that the court has jurisdiction over the defendant, and establish that the facts pleaded entitle him to relief as a matter of law.

First the plaintiff must establish to the court's satisfaction that a defendant again whom default is sought has in fact been served with process. "[S]ervice of [process] is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction

4

over the person of the party served." <u>Mississippi Publ'g Corp. v. Murphree</u>, 326 U.S. 438, 444-45 (1946). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of [process] must be satisfied." <u>Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987). Ergo the movant must file an affidavit demonstrating that the party against whom default judgment is sought has been properly served and has failed to defend.

At that point the Clerk of Court "must" note the party's default on the record. Fed. R. Civ. P. 55(a); Local Rule 55.1. This is done by issuing a certificate of default.

At the second step, the plaintiff applies to the court. "[A]fter the clerk of the court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment." <u>GuideOne Specialty Mut. Ins. Co.</u>, 696 F. Supp. 2d at 208 (citing Fed. R. Civ. P. 55(b)). The operative word in that sentence is "may." Once a defendant is found to be in default, she is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992). However, a court retains discretion to determine whether a final default judgment is appropriate. <u>See</u> <u>Enron</u> 10 F.3d at 95. In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." <u>See</u> <u>Enron</u>, 10 F.3d at 95-96.

Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action. <u>See</u> <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir. 2011); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). If liability is established as to a defaulting defendant, then the Court must conduct

5

an analysis to establish damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

As noted above, the Clerk of Court was not asked to issue, and did not issue, certificates of default in connection with plaintiff's most recent efforts to serve process or prior to the making of this motion. Per Rule 55, that is reason enough to deny the motion for default judgment; the clerk has not noted the defaults on the record. And the Clerk decline to enter certificates of default when requested to do so after service was attempted back in 2014, which is the reason that plaintiff's first motion for default judgment was denied.

However, in the interest of either moving or ending this litigation, the court will consider the effectiveness (or ineffectiveness) of service.

### THE HAUGE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS

Federal Rule of Civil Procedure 4 governs the manner in which individuals and corporations may be lawfully served process. See generally Fed. R. Civ. P. 4. Rule 4(f)(1) provides that an individual may be served outside a United States judicial district, where a waiver of service has not been obtained, "by any internationally agreed means of service reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." See Fed. R. Civ. P. 4(f)(1). Rule 4(h)(2) provides that a foreign corporation, partnership, or association can be served in "any manner prescribed by Rule (4)(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." See Fed. R. Civ. P. 4(h)(2).

The clear intent of Rule 4(f)(1) is to follow the Hague Convention when the defendant is from a signatory country. See generally Volkswagenwerk Aktiengesellschaft v Schlunk, 486 U.S.

694 at 705 (1988) ("compliance with the Convention is mandatory in all cases to which it applies.").

Both the People's Republic of China and Hong Kong are signatories to the Hauge Convention.

The People's Republic of China became a signatory to the Hague Convention on May 6, 1991, albeit subject to certain limitations permissible under the Convention.

The Hauge Convention was extended by the United Kingdom to Hong Kong on May 20, 1970, when Hong Kong was under British rule. On July 1, 1997, Hong Kong became a Special Administrative Region of the People's Republic of China ("PRC"). See Cheung v. United States, 213 F.3d 82, 84 (2d Cir. 2000) (discussing history of the legal relationship between Hong Kong and the People's Republic of China). The PRC notified the Netherlands government, the official depository for the Hague Convention, that upon transfer of Hong Kong's sovereignty to the PRC, the Hague Convention would continue to be applicable. Thus far, the PRC has not extended its limitations on Hague service to Hong Kong.

Because both are signatories, in the absence of a court order specifying otherwise, service must be effected pursuant to the Hague rules in both the PRC and Hong Kong.

The primary innovation of the Hague Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. (20 U.S.T. 361 Art. 2.) Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. (Id. Art. 5.) The central authority must then provide a certificate of service that conforms to a specified model. (Id. Art. 6.) Signatories to the Convention may also effectuate service through diplomatic or consular channels (Id. Arts. 8-

7

9) or may agree to permit service of process by channels not otherwise enumerated in the Convention. (Id. Art. 11.) Absent such agreement, however, service may only be effectuated through a central authority or through diplomatic or consular channels.

### i. *Service of Process Under Article 10*

Article 10 of the Hauge Convention states, "Provided the State of destination does not object, the present Convention shall not interfere with – (a) the freedom to send judicial documents by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, [or] (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." (20 U.S.T. 361 Art. 10.)

Thus Article 10 contemplates that, unless an objection is made by the destination state, a party may effect service by personal delivery made by an authorized process server. (Id.; see also Hague Conference, Practical Handbook on the Operation of the Service Convention (4th ed. 2016), pp. 93–94 [Arts. 10(b) and 10(c) allow service "directly through" competent persons of the destination state].) Significantly, such process server must be "*of the State of destination*"– in this case, Hong Kong or the PRC. (emphasis added) (20 U.S.T. 361 Art. 10(c).)  Residents of the United States are not authorized to serve process abroad under the Hague Convention.

Article 10(a) also authorizes the "sending" of judicial documents by mail. Whether that provision (which, unlike subsection (b), does not use the word "service") authorizes service of process by mail is a question that has vexed courts for years. However, in this Circuit it is fairly

8

well settled that Article 10(a) authorizes service of process by mail where no objection thereto has been interposed. See infra., pp. 13-14.

It is now necessary to discuss how these provisions apply to service of process in the PRC and in Hong Kong. Because the PRC presents an easier case, I turn to it first.

### ii.   Service of Process on the PRC Defendants

At various times, service was attempted on three of the defendants in the PRC: Eatware Inc., Eatware Global Inc., and Jonathon So. I will refer to them as "The PRC Defendants."

In its Declarations and Reservations on the Hague Service Convention, the PRC formally objected to all service under Article 10, which means that service of process from a foreign country either by mail or through state-authorized process servers is strictly forbidden. The only way to serve process in the PRC is through application to a Central Authority for the appointment of someone to effect personal delivery of a summons and complaint. (20 U.S.T. 361 Art. 5.) Moreover, the documents to be served must be translated into Chinese before the Central Authority will process an application for service within the PRC. (Hauge Conference, China - Central Authority & practical information <https://www.hcch.net/en/states/authorities/details3/?aid=243> [as of June 07, 2018]).

On December 24, 2018, Defendant Eatware, Inc., a Nevada corporation whose corporate registration was revoked in 2010 (Dkt. No. 1, attachment 1 (second half of complaint) at ¶ 42), with no principal place of business in the United States alleged, but with an address listed in the complaint as Hong Kong, was allegedly served by personal delivery at an address in the PRC.[1]

---

[1] If indeed Eatware Inc. is a Nevada corporation and has its principal place of business in Hong Kong, which is the address listed for it at the beginning of the complaint, one wonders why service was attempted in the PRC. I assume it is because Eatware's corporate registration in Nevada was allegedly revoked and Mr. So, who is alleged to be the principal of both Eatware Global (a BVI corporation) and Eatware Inc., is alleged to be a "resident" of "Wisconsin, Hong Kong and the PRC." (Compl. ¶ 8.),

Delivery was effected by on Xin Shi, who gives his address as Albrightsville, Pennsylvania (Dkt. No. 37.) There is no indication in the documents allegedly attesting to service of process that this individual was appointed by the Central Authority in the PRC to effect the personal delivery of the summons and complaint – an event that would be attested by official state documents from the PRC. There is no indication that application was ever made to the Central Authority in the PRC for the appointment of Mr. Shi, or anyone else, to serve process in this case. And there is no indication in the record that the documents to be served were translated into Chinese, as required by the PRC as a precondition to the appointment of a process server.

Therefore, it does not appear that service on Eatware Inc. in December 2018 was properly made pursuant to the Hague Convention as recognized by the PRC.

There is no return of service on the docket for the other two PRC Defendants in 2018 or 2019. I thus find that they were not served after new summonses were issued.

Looking back to the original effort by plaintiff to serve process on the three PRC defendants back in 2014 reveals that – as the Clerk of Court concluded when she refused to issue certificates of default, and as this court confirmed in its April 2018 decision – service was equally defective. According to affidavits of service filed back in 2014, all three of these defendants – Eatware Global Corp., Eatware Inc., and Jonathon So -- were allegedly served by mail at addresses within the PRC. The mailing was allegedly sent on September 9, 2014. (Dkt. 10, 12, 13.) The PRC absolutely forbids service of process by mail, so this service was ineffective as to all three defendants.

No other attempt to serve Eatware Global back in 2014 is reflected on the docket sheet. As to Eatware, Inc., and affidavit of service indicates that it was also served – again by Mr. Shi – by mail at an address in Middleton, Wisconsin. But in the complaint, the plaintiff alleges that Eatware Inc. is (or was, until its registration was revoked) a Nevada corporation. The complaint does not

indicate that Eatware's principal place of business is located in Wisconsin; in fact, the complaint does not list a Wisconsin address for Eatware, Inc. The only address listed for the corporation is in Hong Kong. Service of process by a mailing sent to Wisconsin, on a defunct Nevada corporation that is resident in Hong Kong, was ineffective.

As to Jonathon So, a similar affidavit of service indicates that he, too, was served by mail at the same address in Wisconsin. But aside from a passing reference (without an address) to Mr. So's being a "resident" of Wisconsin (as well as the PRC and Hong Kong), there is no allegation in the complaint that Mr. So can be found in Wisconsin or any reason to conclude that service on this individual –as to whom service was attempted in the PRC, and whose lone address in the complaint is listed as Hong Kong – is, in fact, someone who could be served by mail sent to Wisconsin. I note that, in the body of the complaint Mr. So is alleged to have attended trade fairs in New York and even to have some sort of a warehouse in Brooklyn (Dkt. No. 1, ¶ 8). Aside from the passing reference to his having a "residence" there, there is not a single allegation in the complaint relating to Wisconsin. Whether any of this would give rise to personal jurisdiction under New York's long arm statute is debatable, but it certainly does not suggest that Mr. So was amenable to service in Wisconsin.

Therefore, I conclude that none of these defendants has been properly served. That being so, plaintiff's motion for a default judgment against them must be denied.

Moreover, since plaintiff has failed for six years to effect proper service on Eatware Inc., and Eatware Global, he has failed diligently to prosecute this action as against them. Accordingly, as I said I would do in my order dated April 18, 2018, this action is dismissed as against those defendants for failure to prosecute.

11

Because it appears that service was also attempted on Jonathon So in Hong Kong, his situation is discussed further below.

### iii. Service of Process on the Hong Kong Defendants

There are six defendants who were ostensibly "served" in Hong Kong: Jonathan "Lo," Konki Lo, HKCMCPA Company Limited, Man Shing Wu, Ming Cheung, and Johnny Ka Siu Tang. I will refer to them as "The Hong Kong Defendants."

I note first that no defendant named "Jonathon Lo" appears in the caption of the complaint. Jonathon So, who is a defendant, is listed in the complaint as having an address in Hong Kong, and is alleged to reside in both the PRC and Hong Kong. I conclude that "Lo" and "So" must be the same person and will evaluate Jonathon So as a Hong Kong Defendant as well as a PRC Defendant.

Hong Kong's objections to Article 10 of the Hauge Convention are not identical to the PRC's, despite the termination of its status as a Crown Colony. In 1997, when China declared the Hauge Convention would continue to apply to Hong Kong, China declared as follows: "With reference to the provisions of sub-paragraphs b and c of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or other authority designated, and only from judicial, consular or diplomatic officers of other Contracting States." (Hague Conference, China (Hong Kong) - Other Authority (Art. 18) & practical information <https://www.hcch.net/en/states/authorities/details3/?aid=393> [as of Dec. 07, 2018]). China did not make any objection on behalf of Hong Kong to the "sending" of judicial documents "by postal channels, directly to persons abroad," pursuant to Article 10(a) of the Convention. (20 U.S.T. 361 Art. 10(a).)

12

Service by Mail: The larger number of courts within the Second Circuit adopted the position that Article 10(a) authorizes the "service of process" – not simply the sending of judicial documents that do not constitute "service of process" -- by mail. See Bidonthecity.com LLC v. Halverston Holdings Ltd., No. 12-CV-9258, 2014 WL 1331046, at *7 (S.D.N.Y. Mar. 31, 2014) (holding that the Hague Convention provides for "service by mail if the receiving state does not object"); see also Treeline Inv. Partners, LP v. Koren, No. 07-CV-1964, 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007) ("Since Israel has not objected to Article 10(a) of the [Hague] Convention, service through international registered mail remains an acceptable method of serving [the defendant], an individual defendant who resides in Israel."). Judge McKenna of this court took that position prior to Hong Kong's loss of Crown Colony status, see Silver Top Ltd. v. Monterey Indus. Ltd., No. 94-CV-5731, 1995 WL 70599, at *2 (S.D.N.Y. Feb. 21, 1995) (Since Hong Kong did not object to Article 10, service of process by registered mail is an appropriate method of service in that country under the [Hague] Convention." (citation omitted)).

These cases rely on the Second Circuit's decision in Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986). There, the Second Circuit determined that, because the United States "has made no objection to the use of 'postal channels' under Article 10(a), *service of process* by registered mail remains an appropriate method of service in this country under the Convention." Id. at 839 (emphasis added).

Furthermore, comments made by the State Department of the United States -- to which we give "'great weight'" (Water Splash, Inc. v. Menon, 137 S. Ct. 1504, 1512 (2017)) -- support to the conclusion that service of process by mail is lawful in Hong Kong, with no need for the serving party to make any request to Hong Kong's central authority prior to effecting service by mail. In particular, the State Department's website contains "Judicial Assistance Country Information" for

13

several countries, including Hong Kong. There, the State Department offers instructions for how to submit requests for service to Hong Kong's Central Authority. After offering these instructions, the State Department explains that "Hong Kong did not make any reservations with respect to service *by international registered mail*." (Emphasis added). Hong Kong only "advises" that service by the Convention "is the preferred method." (U.S. Department of State—Bureau of Consular Affairs, Hong Kong Special Administrative Region <https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html> [as of June 13, 2019].)

However, recently my colleague Judge Karas, in In re Coudert Bros. LLP v. Li, No. 16-CV-8237 (KMK), 2017 WL 1944162 (S.D.N.Y. May 9, 2017), concluded that service via mail on a defendant residing in a country that is a signatory to the Hague Convention is not, absent other evidence to the contrary, an "internationally agreed means of service" for purposes of Fed. R. Civ. P. Rule 4(f)(1).

He began by acknowledging that, in Ackermann, 788 F.2d at 838-39, "the Second Circuit has held that where the recipient country is a signatory to the Hague Convention and has not objected to Article 10(a), service on a defendant via mail is not in violation of the Hague Convention". In re Coudert Bros. LLP, 2017 WL 1944162, at *6.

However, Judge Karas reasoned that the Second Circuit never addressed "'the question of whether service pursuant to Article 10(a) is an "internationally agreed means of service" authorized under Rule 4(f)(1), such that service on Defendant via mail would satisfy the Federal Rules of Civil Procedure.'" Id. He went on to state:

> The plain language of the Hague Convention does not expressly authorize service via mail—the Convention is, in words and effect, agnostic on the topic. As Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements and the Hague Convention makes no affirmative authorization of service via mail, service via

14

mail is not an appropriate form of service under Rule 4(f)(1) on a defendant residing in a
country that is a signatory to the Hague Convention, absent some other international
agreement providing for service via mail. The cases in the Second Circuit suggesting
otherwise are unpersuasive.

Id. at *8. (internal citations omitted.)

In other words, Judge Karas concluded that the word "sending" in Article 10(a) of the

Convention was not necessarily synonymous with the word "service" – the word that was used in

Articles 10(b) and (c) of the same Convention. This comports with settled maxims of contract

construction (and a treaty is nothing if not a contract) – to wit, that proper interpretation of a

contract generally assumes consistent usage of terms throughout the Agreement. See Finest Inv.

v. Sec. Trust Co. of Rochester, 96 A.D.2d 227, 230 (App. Div. 1983), aff'd, 61 N.Y.2d 897 (1984).

That being so, he concluded that Hague did not "authorize" service by mail; it merely "allowed"

for such service, by providing that the Hague Convention "shall not interfere" with service by that

means. Id.

In light of his determination that the Hague Convention did not "authorize" service by mail,

as required by Fed. R. Civ. P. 4(f)(1), Judge Karas concluded that service by mail could only be

effected in Hong Kong consistent with Fed. R. Civ. P. 4(f)(2). That rule authorizes service by

certain prescribed methods reasonably calculated to give notice in the absence of either and

"internationally agreed means," or "an international agreement [that] allows but does not specify

other means." See Fed. R. Civ. P. 4(f)(2). In particular, Rule 4(f)(2)(A) allows service to be

effected by any means prescribed "by the law of the recipient country," Fed. R. Civ. P. 4(2)(A),

while Rule 4(2)(C) permits service (i) by personal delivery or (ii) by any form of mail "that the

clerk addresses and sends to the individual and that requires a signed receipt" – but only as long

as those two means do not run afoul of the law of the recipient country. Judge Karas determined

that Hong Kong law permits service via mail on persons resident in Hong Kong. He thus concluded

that service via mail from the United States would be proper if done in accordance with the law of

Hong Kong. In re Coudert Bros. LLP, 2017 WL 1944162, at *12. Those laws provide than an

affidavit of service must include a statement that;

> (i) in the opinion of the deponent (or, if the deponent is the plaintiff's solicitor or an employee of that solicitor, in the opinion of the plaintiff) the copy of the writ, if sent to, or as the case may be, inserted through the letter box for, the address in question, will have come to the knowledge of the defendant within 7 days thereafter; and
> (ii) in the case of service by post, the copy of the writ has not been returned to the plaintiff through the post undelivered to the addressee.

Rules of the High Court, O. 10, r.1(3)(b).

Judge Karas' analysis is certainly interesting, and it responds to a concern that this court

has about the use of two very different and non-synonymous words – "sending" and "service" in

different sections of Article 10 of the Convention. I would be most interested in the Second

Circuit's view of the matter. However, given the Second Circuit's flat statement that "service of

process" by mail would be effective in a foreign country in the absence of any specific objection

thereto (such as that made by the PRC) – a view endorsed by the Department of State – I am

reluctant to hold otherwise. I will, however, analyze the issue of mailing both under the traditional

view within the Second Circuit and under Judge Karas' more nuanced view.

Personal Service: Hong Kong's declaration under Article 10(b) and (c) is limited to

documents sent through "official channels" from "judicial, consular or diplomatic officers."

Federal courts have concluded that Hong Kong does not require a private party to make a request

to Hong Kong's central authority before using an authorized agent to serve another party

personally. See generally McIntire v. China Mediaexpress Holdings, Inc., 927 F. Supp. 2d 105

(S.D.N.Y. 2013); see also Whyenlee Indus. Ltd. v. Superior Court, 33 Cal. App. 5th 364 (2019).

However, there is no warrant for concluding that personal delivery by anyone other than an agent

authorized by Hong Kong would be effective. To the contrary: anyone who serves process

personally in Hong Kong must be "a competent person[] *of the State of destination*" – meaning an authorized Hong Kong process server (emphasis added) (20 U.S.T. 361 Art. 10.)

With this discussion in mind, I turn to the attempts at personal service on the six Hong Kong Defendants.

Three of the six were allegedly served by personal delivery in Hong Kong in 2018.

According to the court's docket sheet, service was "returned executed" on Defendants Jonathon So (Lo) and Kon Ki Lo in April 2019. Both were allegedly served by personal delivery at an address in Hong Kong on December 18, 2018. (Dkt. No. 35, 36.)  The record also reflects that HKCMCPA Company Limited was served by Mr. Shi via personal delivery at an address in Hong Kong, also on December 18, 2018. (Dkt. No. 38.)

All of these personal deliveries were made by Xin Shi – the individual who is, by his own attestation, was a resident of Albrightsville in the Commonwealth of Pennsylvania in 2018.

Unfortunately, there is no proof in the record that Xin Shi was an authorized process server in Hong Kong. Shi does not aver under oath that he is an individual authorized to serve process in Hong Kong. He certainly does not give any indication that he is a competent person "of the state of destination," which in this instance is Hong Kong. Given the fact that he swears his residence in Pennsylvania, as well as the absence of some official document from Hong Kong appointing him as a process server, it is fair to conclude that this individual is not an authorized process server in Hong Kong.

The same individual – who apparently lived in New York City at the time -- also "delivered" a copy of the summons and complaint to Konki Lo in Hong Kong four and one half years earlier, on September 9, 2014. (Dkt. No. 9.) The return of service affidavit again contains no attestation, and is accompanied by no proof, that Shi was a "competent person of the state of

destination" who was authorized to serve process in Hong Kong. The Clerk of Court refused to issue certificates of default after receiving this return of service, on the ground that the proof of service did not indicate compliance with the Hague Convention. For the reason discussed above, her conclusion was correct.

The motion for entry of a default judgment against Kon Ki Lo is, therefore, denied, and as per the court's April 18, 2018 order, the case is dismissed as against them for failure to prosecute. Plaintiff was warned that he had to serve in accordance with the Hague Convention. His failure to do so dooms his case after six years.

The personal delivery to Jonathon So in Hong Kong by Mr Shi was similarly ineffective. This means that all efforts to serve Jonathon So (Lo), at whatever address, were unavailing. The court thus denies the motion for a default judgment as against Mr. So and dismisses the complaint as against him.[2]

I now turn to HKCMCPA Company Limited. The complaint alleges that it is a Hong Kong corporation engaged in the provision of accounting services, and gives its address as Hong Kong (which, it can be fairly inferred, was its principal place of business). The corporation was ostensibly served by mail at an address in Hong Kong on September 9, 2014. (Dkt. No. 14.) Service was made by the same process server, Xin Shi, who at that time lived in New York, NY. (Id.)

Unfortunately, the record provides no evidence of this mailing or where it originated. Obviously, Mr. Shi could not have personally "delivered" copies of document to individuals in Hong Kong on September 9, 2014 and mailed documents from the United States to Hong Kong

---

[2] It bears noting that Mr. Shi, the alleged process server, averred that he lived in the United States, but claimed no expenses in connection with the "delivery" of these documents – which at least suggests that he did not go to Hong Kong and make personal delivery of the summons and complaint, as he attests. The face of the affidavits of service suggests that there was something not right about service of process.

on the same day. Mr. Shi's affidavit does not (as a proper affidavit of service should) indicate where he placed the item in the mail.

If one assumes (as Judge Karas found) that the mailing had to be carried out in accordance with the law of Hong Kong, there is yet another defect in the 2014 service affidavit. Hong Kong law requires an individual who serves process by mail to swear that (1) the mailing was likely to reach the defendant within seven days, and (2) the mailing was not returned to sender. See Rules of the High Court, O. 10, r.1(3)(b). Mr. Shi's affidavit does not contain the required averrals.

The other three Hong Kong Defendants are: Man Shing Wu, Ming Cheung, Johnny Ka Siu Tang. Although the Clerk issued new summonses as to each of them subsequent to this court's April 18, 2018 order, there is no indication that they were served with this new process, or that any effort was made to serve them, in 2018 or early 2019.

In September 2014, however, service was "returned executed" on these three individuals. Messers Wu and Cheung, like Messers So and Lo, were allegedly served by personal delivery in Hong Kong on September 9, 2014. (Dkt. No. 8, 11.) Again, this "personal service" was allegedly made by Xin Shi, of New York, New York, who does not indicate that he is authorized by Hong Kong to serve process in Hong Kong. Again, the Clerk of Court years ago declined to enter certificates of default on the ground that there was no proof in the record that service was effected in accordance with the Hague Convention, and a prior motion for default judgment was denied on that ground. Again, plaintiff was warned; he did not correct his error. The motion for a default judgment is denied as to Man Shing Wu and Ming Cheung and the case is dismissed against them for failure to prosecute.

Like HKCMCPA, Johnny Ka Siu Tang was allegedly served by mail at an address in Hong Kong on or about September 9, 2014. As with the corporation, the mailing was done by Xin Shi

of New York, New York (Dkt. No. 15.) The affidavit of service suffers from the same defects as that filed in connection with service on HKCMCPA Company Limited. And the Clerk of Court declined to issue a certificate of default when Plaintiff first moved for default judgment in 2016.

*Traverse Hearing*

This court has already made a number of accommodations to plaintiff's *pro se* status. With great reluctance, I will make one more.

The court orders a traverse hearing, to be held before The Hon. Sarah Netburn, United States Magistrate Judge, to inquire into the particulars of the 2014 service on HKCMCPA Company Limited and John Ka Siu Tang and to determine whether said service is sufficient under Fed. R. Civ. P. 4. The only witness at this hearing should be Xin Shi, the process server who swore out the proofs of service. Indeed, he is the only competent witness; no one else, including specifically the plaintiff, has submitted proof of service, and so no one else is competent to testify at the hearing.

The only two parties as to whom the issue of service is open are HKCMCPA and Tang. The only issue is whether and how service by mail was effected. Specifically: were the documents sent from the United States or from Hong Kong? If the latter, were they returned to sender? Was the mailing reasonably calculated to arrive within seven days? If from the United States: were the documents sent via international registered mail? Or by some other means? From where? When? As noted above, it is highly unlikely that Mr. Shi was in both Hong Kong and New York on the same day (although there could be International Date Line issues).

The Clerk's refusal to issue certificates of default as against these defendants predicated on this service fully justified the denial of the motion for default judgment several years ago.

However, again in view of Plaintiff's pro se status, I want to make sure we understand the full details of service on these two defendants.

If service was not properly made, then the case will be dismissed as against these two defendants as well, and the matter will be closed.

The court is specifically *not* reopening the issue of service on any of the other defendants. The case has been dismissed as against them, with prejudice, for failure to serve them properly over the course of the last six years. No new attempts are permitted.

Even if service of process was procedurally proper, it is not constitutionally permissible for New York to exercise personal jurisdiction over the two remaining defendants.

*Additional Thoughts*

Nothing in this opinion should be interpreted as expressing any view on the merits of (1) whether it is constitutionally permissible for New York to exercise personal jurisdiction over the two remaining defendants (it seems highly dubious) or (2) whether plaintiff has adequately pleaded a right to relief as against either of these defendants – both issues on which the court would have to be satisfied before any default judgment would issue.

(i)     Personal Jurisdiction

In particular, the court would have to be satisfied that the exercise of personal jurisdiction comported with constitutional due process principles. Since International Shoe Co. v. Washington, 326 U.S. 310 (1945), the touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, that person or entity must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Id*. At 316, quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

21

This principle "presaged the development of two categories of personal jurisdiction": general and specific personal jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 126 (2014). Based on the allegations of the complaint, it does not appear that this court has personal jurisdiction over either of the two remaining defendants in this case.

Plaintiff pleads that this court can exercise general jurisdiction over HKCMCPA Company Limited because HKCMCPA was "doing business in, and hence is a resident of, this judicial district." (Compl. ¶ 4.) That is an incorrect statement of the law. Courts "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127, 134 (2014). "Aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018). As previously noted, HKCMCPA is an accounting firm. Its place of incorporation and principal place of business are Hong Kong. (Compl. ¶ 12.) The complaint is devoid of a single example of business activity undertaken by HKCMCPA in New York, let alone the "continuous and systematic" contacts that would render this Hong Kong entity "at home" in New York. (Compl. ¶ 12 READ THE REST OF THE DOCUMENT.)

Plaintiff does not plead any facts tending to show that New York could exercise general jurisdiction over Mr. Tang, who is alleged to be a resident of Hong Kong and a principal of HKCMCPA (Compl. ¶ 13). Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity. See, In re AstraZeneca Sec. Litig., 559 F.Supp.2d 453, 467 (S.D.N.Y. 2008) ("A person's

status as a board member is not alone sufficient to establish jurisdiction …") (citations omitted), aff'd sub nom. State Univs. Ret. Sys. of Illinois v. Astrazeneca, PLC, 334 Fed. Appx. 404 (2d Cir. 2009). The Plaintiff does not allege that Defendant Tang had any connection with New York whatsoever, let alone that he had any aside from his role as a principal in HKCMCPA. The brief mentions of Mr. Tang in the complaint concern his alleged knowledge, as a principal of HKCMCPA, of Eatware Global's negative cash flow (Compl. ¶12) and his firm's demand for a cash payment from CHSH (a previous name for Eatware Inc., the Nevada corporation). General jurisdiction over Mr. Tang cannot be inferred from the face of the complaint.

The complaint is similarly defective with regard to specific jurisdiction over either of these defendants. To establish specific jurisdiction, a "defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014). Plaintiff alleges only that HKCMCPA Company Limited "had significant business activities in New York during the period relevant to this complaint". (Compl. ¶ 12.) But "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough." Bristol-Myers Squibb Co. v. Superior Court of Cal., 137 S. Ct. 1773, 1781 (2017). Absolutely nothing in the complaint identifies what HKCMCPA's "significant business activities" in New York were or suggests that those activities give rise to the Plaintiff's cause of action.

The learned Magistrate Judge should consider, as part of the traverse hearing, whether, even if service was effected, there are facts that would give rise to personal jurisdiction over either of the two remaining defendants. If, as I suspect, the answer is no, I will decline to enter a default and dismiss the complaint as indicating on its face a lack of personal jurisdiction.

(ii)     Whether Admitted Facts Show Entitlement to Relief

23

There is also a serious question as to whether any facts (not including conclusory statements) that would be deemed admitted by either of these defendants in the event they had been properly served give rise to any viable claim for relief – in particular, any viable claim for relief under the federal Racketeering Influence and Corrupt Organizations (RICO) statute, but also claims for misrepresentations by either HKCMCPA or Tang, which appear to be woefully deficient in terms of facts pleaded. Again, I invite the learned Magistrate Judge to consider whether it would be appropriate to grant a default judgment on the merits.

Inquiry into either of these issues is, of course, unnecessary if service on these defendants in 2014 was deficient. In that case, I will simply dismiss the complaint as against them.

## CONCLUSION

For the reasons set forth above:

(1) Plaintiff's motion for a default judgment is DENIED as to all defendants except HKCMCPA and Tang;

(2) As to defendants HKCMCPA, the motion for a default judgment is DENIED WITHOUT PREJUDICE TO RENEWAL following a traverse hearing that is ordered before The Hon Sarah Netburn on the issue of service of process and personal jurisdiction;

(3) The complaint is DISMISSED WITH PREJUDICE FOR FAILURE TO PROSECUTE as to all defendants except defendants HKCMCPA and Tang.

This constitutes the written decision and order of the court. The Clerk shall close the motion at Docket #41 on the court's list of open motions.

Dated: May 5, 2020

Chief Judge

BY ECF TO ALL PARTIES

24